# FEDERAL DEFENDER SERVICES
## OF WISCONSIN, INC.
LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Shelley M. Fite
Anderson M. Gansner
Gabriela A. Leija
Peter R. Moyers
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Kelly A. Welsh

22 East Mifflin Street
Suite 1000
Madison, Wisconsin  53703

Telephone 608-260-9900
Facsimile 608-260-9901

September 11, 2019

Honorable James D. Peterson
United States Chief District Court Judge
120 North Henry Street
Madison, Wisconsin 53703

    Re:    *United States v. Robert Hosler*
                Case No. 18-cr-133-jdp

To the Honorable James D. Peterson:

      In anticipation of sentencing and in support of a ten-year sentence, the defense files this memorandum, the attached letters of support, and a survey from court tracker on the range of sentences for those convicted of sexual abuse of a minor twelve and under in Eau Claire county.

      This is a difficult sentencing memorandum to write. But that's not because this case doesn't fit neatly within the fact-patterns we normally see or because Hosler isn't the "typical" travel/child-pornography offender, the difficulty lies in reconciling the crime and the person—making sense of it all. Hosler has many of the markings of a very good person, who a year ago many would applaud. That's reflected in his background and the outward signs of success that he had.

      When it comes to his background, his family is exceptional. His mom a saint and his dad a man of honor. And Hosler was not a wayward son—the prototypical rebellious-army brat. Instead, he's kind and respectful. His speech is marked with sirs and thank yous; and on his part, there is little quibbling and no whining. When it comes to the markings of success, he has an engineering degree and had a good job as a contractor

Federal Defender Services
   Of Wisconsin, Inc.

Honorable James D. Peterson
September 11, 2019
Page -2-

with Apple. Not bad. His sort doesn't usually come into the criminal justice system. Yet, here he is.

So what happened? I have wrestled with this case for almost a year. I took it to trial and I have met with him well over two dozen times, maybe more. I have given him a catalogue of books to read, including *Man's Search for Meaning, Brothers Karamsov, Quo Vadis, Into the Wild, Brave New World* and, of course, *Les Mis*. And when he was moved to a new jail, the Federal Defender's office inherited a bounty of other books that his mom sent him, ranging from marked-up religious devotionals and books on recovery to a worn GRE study guide—that was a first. And in addition to those conversations with him and his family, I have read a lengthy eighty-page hand-written biography from him. From all of that, this is what I can make sense of Hosler's life and crime.

He is all the things he presents as—a hardworking, good, caring, honorable person. But he also had a secret life. A life that was, for a time, within the tolerable bounds of his ethos. He would drink and drink to excess. Not the best thing to do, but (again) acceptable. He would smoke weed and do recreational drugs. Probably pushing it, but also acceptable, at least in a dozen or so states. Then he started to get into pornography. Again, not in line with his Christian upbringing but not outside of the norm. He was comfortable in that life and over time that life became a greater piece of what he did and who he was concerned with being—even though he still presented all the signs of being close to the person his parents raised: he had the degree and the good job, with lots of upward mobility.

But then, his personal life went off the rails. Here, it's not really clear what the precise cause was. Hosler traces it to a lover being drugged and kidnapped. That seems far-fetched, but it checks out. There are news stories about it and here is here missing person poster.

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Honorable James D. Peterson
September 11, 2019
Page -3-



Houston Police Department Missing Persons Unit
832-394-1816

According to Hosler, he really cared for her and felt responsible—and in the midst of it, he started drinking more and more. That's the easy answer: ever greater abuse of drugs and alcohol in the midst of personal tragedy sparked a downward spiral.

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Honorable James D. Peterson
September 11, 2019
Page -4-

But I think (as an officer of the Court and a pretty good judge of human failings) that his downward spiral began before what happened to ▌▌▌▌. Over the past few years, Hosler became, by his own admission, more and more promiscuous—devouring pornography, sleeping with whomever he could, and for some reason (lost on all but millennials) engaged in consensually videotaping himself with many of those he slept with. His world revolved around sex. Not in the mad, addictive sense that this Court saw with John Gilbert but in a very, very, very unhealthy fixation. He was ripe for a fall during this behavior—especially when you factor in the cocaine and other recreational drugs that he was taking.

Then, in the midst of this downward spiral that he's already set in motion, he meets and falls for ▌▌▌▌; she's drugged and taken when they were supposed to be out together. And then he truly goes off the deep end. He was headed for a hard fall far before what happened to her. It's just that when he was gearing up for his fall most of his really problematic behavior was within what society says is tolerable: porn, promiscuity, alcohol and recreational drug abuse. And when he starts to take on that additional strain of ▌▌▌▌ disappearance, the fragile center won't hold and things fall apart.[1]

What follows is a course of ever more destructive behavior. He starts cruising the dark web; he looks at CP; he does cocaine more often and then drinks himself to sleep. It's just a recipe for disaster. And then, when he's on the dark web, he comes upon this website and he engages. Now, the Court is familiar with the facts (you sat through the trial and read all the texts and emails), and there are three points worth stressing about the texts and emails. First, the elements of Hosler's character (good and bad) that shine through; second, the elements that reveal he was truly new to this and had never done this before, *ever*; and third, the elements of the sting that normalized this behavior and allowed Hosler to go through with what he probably wouldn't have otherwise done.

Concerning the first point and the elements that reflect his character, there are two sides to that. On the bad, he has some serious sexual dysfunction going on there. His thought life had been riddled with these dark fantasies, and his sex life had probably

---

[1] I have been circumscribed in what I represent about what happened with ▌▌▌▌ because I have only what Mr. Hosler knows or has been told and what I can find on the internet. That is not to say Hosler doesn't know what happened or that he's lying, but what he'd been told by her and her family may not be the full story of her disappearance and being found eight or nine days later. She stopped speaking with Hosler after her return and was (in his words) a completely different person. Hence the careful choice of words in what I've represented about her circumstances and the redaction of the publicly filed memo. But that does not change its effect on Hosler.

Federal Defender Services
  Of Wisconsin, Inc.

Honorable James D. Peterson
September 11, 2019
Page -5-

been taken over by them for some time. That's certain, and it's scary. But the texts also reveal that even in the midst of trying to arrange with a mother to have sex with her minor daughter, he has some elements of natural goodness. Indeed, in a twisted way, he's a somewhat decent guy. And even before he's certain whether this is real, he's willing to send the "mom" money to help pay rent. As an aside, the officer's refusal of the money should have been a sure sign to anyone with a hint of experience in the criminal milieu that this wasn't real. With there being only three options of what Hosler was dealing with—this being real, this being a scam, or this being a cop—only a cop refuses the money.

That informs the second point, Hosler is not some experienced sex tourist who the government finally caught. He was a complete tyro. In support, the Court can credit his naiveté, his own consistent admissions to the officer that this was his first time, and his post-arrest statements. Indeed, Hosler is (thankfully) a person who got caught in his first foray into this life, and society can rest assured that he never victimized (with sexual contact) another child before.

That also leads to a third point prominent in the chats: if the scenario sketched by the officer wasn't so abnormally pedestrian, Hosler probably doesn't go through with this. That's not to say he wasn't interested. He sought out the post and responded and even traveled here. So I am not arguing, for one minute, that he was entrapped or this was against his will. He was all in. But you can see in the texts moments of hesitation on Hosler's part, and if the response from the officer was something other than this bizarre-sexual fantasy, where sex with *this* minor was so normalized, Hosler probably thinks better of going through with it.

Again, I am not arguing that the officer did anything wrong, nor am I arguing that what Hosler did wasn't a crime and or that it wasn't horrific. But on the spectrum of what we see with these types of cases, it's somewhat different. There are some cases, where the behavior is a cold transaction for sex with a minor; there are others where the defendant is actively seeking to manipulate the minor by posing as another minor or targeting them on tween chat rooms. Hosler's crime has a much different feel from those—he was being invited into a bizarre sexual enterprise with a minor, who was seeking lovers outside her immediate family. Again, that circumstance doesn't mean Hosler isn't guilty or shouldn't be punished, but he's simply not as bad as someone who pretends to be a minor or who is purely transactional. Both are (in my opinion) scarier sorts of people than Hosler.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable James D. Peterson
September 11, 2019
Page -6-

So this Court has to weigh it all and arrive at a just sentence. On the one hand, there is the undeniable evil of his crime. It's bad. On the other, the Court has a young man who has lived a crime-free life, has a solid education, and work history. It's his first offense, and he's never been to prison. His sexual dysfunction is recent, it's influenced by alcohol and drug use, and he's never had treatment. Additionally, he has a solid base to build upon and return to. On that point, it's worth highlighting a few of the letters sent in support.

From his mother, Elizabeth Hosler:

- Robert… was [raised] too uphold the values we held and live by – duty, honor, integrity, loyalty, personal courage, respect, and selfless service. Robert has always been a very caring, thoughtful, and loving person.

From his cousin, Kristen Tracey:

- Robert is highly intelligent, loves his family, and was one of the most caring people I know. I just want to say that what he did isn't who he really is. He comes from a good home, a loving extended family, and given the change could come back from this.

From his aunt and uncle, Terry and Vickie Hudgins:

- Robert has always been an individual that has set an example for others. He comes from a military family, so although mistakes have been made, he was instilled at an early age with an understanding of honor, discipline, and integrity. While in school, Robert worked as a tutor assisting other students… he was a leader and cared very much about his fellow students and their success. This is the type of person that Robert is and always has been, even during his time of grave mistakes.

Weighing all of this and considering it against the instrumental and moral goals of sentencing, these are the points that the Court should consider (within the argument sketched above) in arriving at a sufficient but not greater than necessary sentence. The instrumental goals are, fortunately, somewhat easy and fully support a ten-year sentence.

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Honorable James D. Peterson
September 11, 2019
Page -7-

When it comes to protecting the public, there is little in Hosler's life or this crime that establishes he is an inveterate predator and that anything beyond ten years is necessary to protect the public. In many ways, the shame of this being revealed and the past eleven months in county jail, coupled with a lengthy term of supervision and sex-offender treatment, would be enough to protect the public. But even if that's too optimistic, at some point well before 2029, society is safe from the threat Hosler now poses, and he can be released, under supervision. Thus, there is no reason under the instrumental goal of protecting the public that Hosler needs a sentence above ten years.

When it comes to the other instrumental goal of deterrence, this sentence (and anything beyond ten years) will do nothing to stop people from targeting minors. It's been widely known (and for a very long time) that sex with a minor is a ticket for prison and a *long* time on the registry. Yet, that universal truth and knowledge hasn't stopped or slowed the phenomena. So additional years beyond the mandatory minimum ten will not serve any general-deterrence goal.

But deterrence isn't limited to the general public, there is the matter of what will convince Hosler that this sort of behavior is not worth it. To that end, I think he get its: being exposed, losing his job, having his life (and plans) derailed, the certainty of incarceration, decades on the registry, and any time he's googled the world knows what he's done. All of that has set in and driven home that this was not the course he should tread. Indeed, the sentence could be ten months and Hosler would be deterred from ever doing something like this again. Remember: this was his first time, so he is not someone who is fixated on this "lifestyle" of having a sexual interest in minors. Thus, specific deterrence is accomplished in less than ten years, but certainly nothing more is accomplished with a sentence above ten years. It's simply overkill at that point. In sum, the instrumental goals of sentencing are satisfied with a sentence of ten years, and there is no reason when considering the instrumental goals of sentencing for the Court to go above that.

That, of course, leaves the moral goal of sentencing: retribution, and assumed in that is, of course, the idea of parity and promoting respect for the law. Now, retribution is a hard concept. Like-minded people of exceeding goodwill can disagree on what an appropriate sentence is and debate over how badly society has been harmed by a given act and what term of years will redress an injury. Here, if the minimum wasn't ten years, then there could be a serious discussion on what harm society needs to have redressed when there is not an *actual* victim, when the person's decisions are clouded by drugs and

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Honorable James D. Peterson
September 11, 2019
Page -8-

alcohol, and when the person has never been in trouble before. Indeed, the very idea of retribution is rooted in the idea that a harm needs to be redressed. And the circumstances of the act (was it a first time? was it influenced by drugs and alcohol? is the defendant otherwise a good person?) informs whether mercy is added-in there. Again, all of that factors into the mix of what this Court has to decide but most of it is mooted by the ten-year-mandatory minimum. That sets the bar.

Whether the bar should be lower is a question for Congress, but it's been set and what this Court is stuck with. It is, however, worth noting that it's only the use of the internet that garnishes the mandatory minimum, neither the actual travel charge, 18 U.S.C. § 2423, nor the possession-of-child-pornography charge, 18 U.S.C. § 2252(a)(4)(B), would mandate ten years. It just so happens that in passing § 2422(b), Congress also proscribed it.

It's worth focusing for a second on what would have happened if Hosler had lived in Wisconsin and this was kept as a state crime. Of course, state judges are often confronted with measuring how much time a person who engages in this sort of behavior should serve. And after this Court noted at sentencing (not the one we had yesterday) the lack of guidance on how similar cases are punished, I had a service run a survey of the cases involving sexual assault of twelve-year-olds and younger in Eau Claire. Now, these cases involve *actual* sex or sexual contact with a minor twelve-years-old *and under*; and in over 70% of those cases, the defendant got less than 10 years—a third didn't get sentenced to prison. The results are attached as Exhibit B.

So ten years (or less) is not far off for someone who has actual sexual contact with a minor in Eau Claire; the issue is should Hosler's use of email to facilitate that sexual encounter result in a greater sentence? I submit that it doesn't. The elected judges of Eau Claire County are pretty reliable barometers of the moral outrage for this crime. And it's important to remember that normally when those judges sentence a person for sexual assault of a minor under twelve, they also have an actual victim they must consider.

Now, I fully admit that hidden within the court-tracker statistics are the facts of those cases. And as we all know, everything turns on the facts—maybe all the cases prosecuted consist of Seventh Graders, who pose online as eighteen-year-olds, mitigating (in some way) the punishment. But a few minutes on google (really an hour) confirms that sentences of less than ten years are common for crimes, involving 12-year-olds and much younger children.

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Honorable James D. Peterson
September 11, 2019
Page -9-

- o One individual in Eau Claire sexually assaulted a four-year-old girl and got one year in jail and fifteen years of supervision.[2]

- o Another individual was charged with assaulting an eight-year-old over the course of a year. His charges were amended and he got nine-months jail and two years of probation.[3]

- o Another individual (in neighboring Dunn County) assaulted four children, over the course of two years. He was sentenced to one year in jail with Huber and five years of probation.[4]

- o And yet another individual (in neighboring Chippewa County) assaulted a girl when she was in "early grade school" and he received a sentence of six years imprisonment followed by four years supervised release.

- o And back in Eau Claire County, another man sexually assaulted a three-year-old and was sentenced to one year in jail.[5]

- o And again in Eau Claire, an individual sexually assaulted a ten-year-old on numerous occasions (with another person) and at least six others minors on other occasions. The sentence was eight years of initial confinement.[6]

- o The other person involved in those assaults was sentenced to nine-and-a-half years.[7]

---

[2] https://www.weau.com/content/news/Eau-Claire-man-sentenced-in-child-sex-assault-case-508150101.html
[3] ttps://wqow.com/news/top-stories/2019/08/27/eau-claire-man-enters-alford-plea-in-child-sexual-assault-case/
[4] http://wqow.com/news/top-stories/2019/02/19/prison-time-ordered-for-menomonie-man-charged-in-multiple-child-sexual-assault-cases/
[5] https://www.leadertelegram.com/news/local-briefs/eau-claire-man-gets-jail-for-sex-assault-of-child/article_db69e21e-71e0-5518-bdac-4bc4cb4ead6d.html
[6] https://www.weau.com/content/news/Couple-faces-charges-after-10-year-old-tells-police-of-sexual-assults-406353965.html; *see also* https://www.weau.com/content/news/Eau-Claire-woman-charged-with-assaulting-children-sentenced-477342853.html
[7] http://wqow.com/news/2016/12/12/eau-claire-man-sentenced-to-prison-in-child-sexual-assault-case/

Federal Defender Services
   Of Wisconsin, Inc.

Honorable James D. Peterson
September 11, 2019
Page -10-

Now, for good measure it's worth noting who gets *more* than ten years:

- o An individual (in neighboring Dunn County) repeatedly sexually assaulted or enticed multiple children under the age of twelve and had over three thousand pieces of child pornography in his possession. He was sentenced to 46 years in prison. [8]

- o An individual in Marshfield sexually assaulted *two* infants and over the course of a decade had assaulted other members of the family; he received 40 years.[9] Full disclosure: I represented him on his federal charges and he got 50 years from Judge Conley.

- o An individual in Eau Claire repeatedly sexually assaulted at least three children under the age of fourteen; he received 38 years.[10]

Those sentences inform the parity argument. What is worse: using email to arrange this or actually going through with it? It's the latter. And if that probably wouldn't be punished above ten years, is there a reason that Hosler should receive any more? The defense respectfully submits that there isn't. The moral ends of sentencing are fully satisfied by a sentence of ten years. Lest the Court or the government think I am cherry-picking these numbers, I'd refer the Court back to the filing in *United States v. Mark Scott,* where a large sting netted nine individuals looking to have sex with a minor. Most received probation and those who didn't had criminal records or (like Mr. Scott) some very aggravating factors.[11] There, we surveyed nine similar defendants.

All of that should inform the moral ends of sentencing and convince the Court that ten years is sufficient. It is in parity with other sentences of similarly situated individuals. It promotes respect for the law. Indeed, the very idea that a sentence depends on what

---

[8] https://chippewa.com/community/dunnconnect/news/lopez-sentenced-to-years-in-prison-maintains-innocence-at-dunn/article_e3ffa3bf-0009-58b1-aa0d-d4a59bba41f5.html

[9] https://www.wsaw.com/content/news/Marshfield-Man-sentenced-to-50-years-for-producing-child-pornography-495213661.html; *see also* https://wcca.wicourts.gov/caseDetail.html?caseNo=2018CF000020&countyNo=10&index=0&mode=details

[10] https://www.weau.com/content/news/Eau-Claire-man-sentenced-to-38-years-in-prison-in-child-sexual-assault-case-509084421.html

[11] *See United States v. Scott,* 15CR131–JDP (Docket entry 80, page 15).

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable James D. Peterson
September 11, 2019
Page -11-

sovereign charges a particular instance of criminal behavior is (or should be) thought antagonistic to the concept of promoting respect for the law. The arbitrary choice of whether to charge a case federally or not doesn't aggravate or mitigate the conduct at hand; instead, the choice to bring the case federally should simply reflect the fact that the federal government has greater resources to prosecute the case and can get a conviction, not that a greater sentence can be extracted from the defendant.

     All of that is to say, when the Court surveys the case and Hosler's personal characteristics, a sentence of ten years is more than appropriate. And thus, the defense submits that under § 3553(a) ten years stands as a sufficient but not greater than necessary sentence and the one this Court should impose.

                               Sincerely,

                               */s/ Joseph A. Bugni*

                               Joseph A. Bugni
                               Associate Federal Defender